741 F.2d 1112
 Bankr. L. Rep. P 70,001
Jeanine M. BOYD, f/k/a Jeanine Boyd Robinson, Appellant,
v.
Bruce G. ROBINSON, Appellee.
 No. 83-1976.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 11, 1984.
Decided Aug. 29, 1984.
 
 Peterson, Gray & Sheahan, Ltd. by Michael P. Wagner, St. Paul, Minn., for appellant.
 Phillip D. Nelson, St. Paul, Minn., for appellee.
 Robins, Zelle, Larson & Kaplan by Raymond G. Lallier, Minneapolis, Minn., for amicus curiae Minnesota State Bar Ass'n.
 Before ROSS, ARNOLD and FAGG, Circuit Judges.
 ARNOLD, Circuit Judge.
 
 
 1
 By order of a state court in a marriage-dissolution proceeding, Bruce Robinson acquired a $7,000 lien on the homestead he shared with his former wife, Jeanine Boyd. This appeal raises the question whether this lien is avoidable under 11 U.S.C. Sec. 522(f)(1) of the Bankruptcy Code. We affirm the District Court's[1] holding that the lien was not avoidable under this section of the code, 31 B.R. 591. We hold that the lien did not attach to any "interest of the debtor in property," as that phrase is used in Section 522(f).
 
 I.
 
 2
 Prior to her marriage to Robinson in 1970, Boyd was the sole owner of her house located in White Bear Lake, Minnesota. During the marriage Boyd and Robinson lived together in the house. In 1979, following commencement of a divorce proceeding, Robinson moved out. On June 30, 1981, the state court granted the petition for marriage dissolution and determined that:
 
 
 3
 The homestead, which was purchased by the wife prior to marriage and retained in her name after marriage, with all of the mortgage payments and other improvements coming out of the marital assets should be awarded to her subject to a lien for one-half of the equity [acquired] by the parties together after marriage.
 
 
 4
 Designated Record (D.R.) 27.
 
 
 5
 The court set the amount of Robinson's lien at $7,000. It reached this figure by first determining the amount that Boyd would have to transfer to Robinson to split the marital assets evenly (about $5,200) and then added to this the amount of non-marital funds that Robinson had spent to add a garage and driveway to the house (about $1,800).
 
 
 6
 After the divorce decree, Boyd filed a chapter 7 petition for bankruptcy, claiming her entire homestead as exempt under Minnesota law. She later instituted an adversary bankruptcy proceeding seeking to avoid Robinson's lien on the homestead. The Bankruptcy Court, 26 B.R. 772, concluded that this lien is a "judicial lien" under the Bankruptcy Code, Sec. 522(f)(1), and allowed Boyd to avoid the lien. The District Court reversed, holding that the lien is neither a judicial lien nor an impairment of an interest of Boyd's. Specifically, it found that Robinson's property interest in the homestead arose by virtue of Minn.Stat.Ann. Sec. 518.58 (West Supp.1984), which charges the family court to make a "just and equitable division of the marital property."[2]
 
 II.
 
 7
 Section 522(f)(1) of the Bankruptcy Code, 11 U.S.C. Sec. 522(f)(1) (1982), provides:
 
 
 8
 Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is--
 
 
 9
 (1) a judicial lien ....
 
 
 10
 Section 101(27) defines "judicial lien" as a
 
 
 11
 lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding.
 
 
 12
 For present purposes, section 522(f)(1) establishes two requirements for avoiding a lien: (1) the lien must attach to an interest of the debtor in exempt property; (2) the lien must be a judicial lien. In applying the first requirement to this case, we hold that the lien imposed by the state court does not attach to an interest of Boyd's, but rather protects a pre-existing interest of Robinson's in the homestead that was created under Minnesota law prior to the marriage dissolution. Therefore, we hold that the lien is not avoidable under Sec. 522(f)(1).
 
 
 13
 Under Minnesota law Robinson had a pre-existing interest in the homestead in several respects. First, under Minn.Stat.Ann. Sec. 507.02 (West Supp.1984), a married owner may not convey a homestead without the signatures of both husband and wife. Thus, by virtue of his marriage to Boyd, Robinson acquired an interest in the homestead by which he could either approve or reject the conveyance of the homestead by Boyd. Further, under Minn.Stat.Ann. Sec. 525.145 (West Supp.1984), Robinson had an inchoate property interest in the homestead (like what we used to call curtesy) which would have vested upon Boyd's death during the marriage.
 
 
 14
 Second, Robinson's contributions to the house during the marriage also served to create an interest in the homestead. Robinson used non-marital funds to construct a driveway and a garage. The state court set the value of these contributions at $1,756. While Boyd and Robinson did not have an express agreement that Robinson would acquire an interest in the homestead as a result of his contributions, such an agreement is not necessary in the marital setting. When two people marry and become a corporate community, they need not make express contracts as to joint purchases.
 
 
 15
 Third, Robinson used part of his salary to make the mortgage payments and contributed his labor to constructing the garage and driveway. While these are contributions of marital property, under Minnesota law it is assumed that marital property is shared property. Under Minn.Stat.Ann. Sec. 518.58 (West Supp.1984), the court is to make a "just and equitable division of the marital property," and it is "conclusively presumed that each spouse made a substantial contribution to the acquisition of income and property while they were living together as husband and wife." This statute recognizes that each spouse has an undivided interest in marital property from the time it is acquired. Thus, Robinson had an undivided interest in the equity of the homestead acquired through marital funds. Indeed, the state court found that Robinson was entitled to one-half of that equity, which was $9,452, but reduced this amount to $7,000 in order to make an even division of all the marital property.
 
 
 16
 Additional confirmation of this interpretation of Minnesota law is provided by two statutes recently enacted by the Minnesota Legislature. Minn.Stat.Ann. Sec. 287.01 (West Supp.1984) defines "mortgage" to include "a decree of marriage dissolution or an instrument made pursuant to it," and Minn.Stat.Ann. Sec. 287.03 (West Supp.1984) declares that "a decree of marriage dissolution or an instrument made pursuant to it, relating to real estate, shall be valid as security for any debt." These statutes provide greater protection for property rights created during the marriage and determined in a dissolution proceeding.
 
 
 17
 In summary, we agree with the District Court that Minnesota law recognizes a spouse's property interest in homestead property acquired with marital assets or assets contributed by that spouse during the marriage. We do not believe that this interpretation of Minnesota law is either a subterfuge to avoid the effect of Sec. 522(f) or would license a state to establish property doctrines that would circumvent this section. This interpretation is based upon substantive grounds and is not a mere verbal classification. The proposition that a spouse has a property interest in homestead property acquired during the marriage is hardly startling or unique to Minnesota. Such an interest recognizes the corporate status of the marriage, the sharing of marital assets, and the responsibility that each spouse has to contribute to the marriage.
 
 
 18
 The lien created by the family court to protect Robinson's interest in the homestead did not attach to an interest of Boyd's. It simply recognized, and provided a remedy to enforce, a pre-existing property right in the marital home. The lien is not avoidable under Sec. 522(f)(1).
 
 
 19
 The judgment of the District Court is affirmed.
 
 
 20
 ROSS, Circuit Judge, dissenting.
 
 
 21
 I respectfully dissent. The majority concludes that the judicial lien in question is not avoidable under section 522(f)(1) because it did not attach to any "interest of the debtor in property," but rather "protects a pre-existing interest of Robinson's in the homestead that was created under Minnesota law prior to the marriage dissolution." Ante at 1114. The latter quoted statement on which the majority bases its opinion is entirely correct. It is also irrelevant.
 
 
 22
 The state court's marriage dissolution order gave the house outright to Boyd, subject to Robinson's lien. Prior to the order, Robinson had a pre-existing interest in the house. But that is all it was--pre-existing. Robinson's prior interest in the house was dissolved. In its place, the court gave him a debt of $7,000 enforceable by a lien on the house. What had been a property interest became simply collateral for a debt. Since the house was simultaneously vested solely in Boyd, the lien must have attached to her interest in the house, for no one else possessed any ownership interest in the house.
 
 
 23
 Apparently the majority is relying on the following statement by the district court: "Debtor's interest does not include * * * that portion of the value of the homestead represented by appellant's lien." In re Boyd, 31 B.R. 591, 595 (D.Minn.1983). But, under Minnesota law, a lien is merely a "charge upon land for the payment of a debt or duty. * * * A lien is [in] no sense an estate or interest in the land." Application of Gau, 230 Minn. 235, 41 N.W.2d 444, 448 (1950) (citations omitted). Hence, Robinson's lien does not deprive Boyd of a complete ownership interest in the entirety of the house.[1]
 
 
 24
 The district court found that the lien was also not avoidable under section 522(f)(1) because it was not a "judicial lien." Instead, the district court found that the lien was an equitable mortgage or a security interest. The majority does not rely on this holding in affirming the district court, for good reason.
 
 
 25
 First, the federal definition of "judicial lien" must control the determination of whether Robinson's interest is a judicial lien for bankruptcy purposes, since the Code provides a definition. See McKenzie v. Irving Trust Co., 323 U.S. 365, 369-70, 65 S.Ct. 405, 407-08, 89 L.Ed. 305 (1945); Hulm v. First Federal Savings & Loan Assoc. of Bismarck, Inc., 738 F.2d 323 (8th Cir.1984). If state law were allowed to vary what would otherwise be a judicial lien by merely calling the interest an "equitable mortgage," havoc would result.
 
 
 26
 Section 101(28) of the Bankruptcy Code defines a lien as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. Sec. 101(28) (1982). Section 101(27) defines a judicial lien as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. Sec. 101(27) (1982). Here, the state court granted Robinson a lien against the house to secure performance of Boyd's obligation to pay him $7,000. Hence, Robinson's lien fits precisely within the Bankruptcy Code's definition of a "judicial lien."
 
 
 27
 The district court based its conclusion that Robinson's lien was not a judicial lien on three arguments. First, the court argued that the lien was not "obtained by judgment," as required by section 101(27) of the Bankruptcy Code, since Robinson had an interest in the house prior to the court order. However, until the order, he did not have the $7,000 interest or the lien on the house. Thus, the lien was clearly "obtained by judgment."
 
 
 28
 Second, the court reasoned that the lien was in the nature of a security interest or a mortgage. However, the lien was clearly not a security interest, within the Bankruptcy Code definitions, since a security interest is defined as a "lien created by an agreement." 11 U.S.C. Sec. 101(38) (1982). Nor was the lien a mortgage, since it was created by the court, rather than by contract or conveyance.
 
 
 29
 Finally, the court argued that the lien could not be a judicial lien because it only attached to a specific piece of property, rather than to all of the debtor's property. However, this fact is irrelevant, since the Bankruptcy Code does not require that a judicial lien attach to all of the debtor's property.
 
 
 30
 The majority and district court decisions are an attempt to avoid the application of bankruptcy avoidance to property settlements. In the past, the federal courts have been hesitant to treat property settlements like other debts. See, e.g., In re Waller, 494 F.2d 447 (6th Cir.1974). Congress' adoption of section 523(a)(5)(B) of the Bankruptcy Code to halt the practice of permitting state law to define what constitutes alimony or support (nondischargeable debts) and property settlements (dischargeable debts) reflects the congressional intent that property settlements should be treated the same as other debts in bankruptcy. While I agree that permitting avoidance of this lien is a harsh result, I cannot in conscience join the majority. This type of decision is for Congress. Once Congress has decided, its judgment should be respected. The majority opinion does not do so. Therefore, I must dissent.
 
 
 
 [1]
 The Hon. Miles W. Lord, Chief Judge, United States District Court for the District of Minnesota
 
 
 [2]
 We of course normally defer to a district court's interpretation of the law of its own state
 
 
 [1]
 It is clear that the state court gave Robinson a lien rather than an ownership interest in the house. The state court described Robinson's interest as a lien. If Boyd had paid Robinson the $7,000, the debt would have been satisfied and the lien discharged. Boyd had the right to exclusive title and possession of the house. Further, Robinson could not share in any increase in value of the house. The problem created in this case could have been avoided if Robinson had been given an ownership interest (for example, an undivided one-third interest subject to a term of "x" years) rather than a lien, but such was not the case